UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21555-Civ-HUCK
(08-20164-Cr-HUCK)
MAGISTRATE JUDGE P. A. WHITE

JUAN ONATE-SOSA,              :

        Movant,              :

v.                           :        REPORT OF
                                      MAGISTRATE JUDGE FOLLOWING
UNITED STATES OF AMERICA      :        EVIDENTIARY HEARING

        Respondent.          :
_____

Introduction

    Juan Onate-Sosa has filed a pro se motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for knowingly and intentionally distributing crack cocaine within 1000 feet of a public elementary school entered following a guilty plea in Case No. 08-20164-Cr-Huck.

    This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in the United States District Courts.

    The court has reviewed the movant's initial motion (Cv-DE#1) with supporting memorandum (Cv-DE#3), the government's response with attached exhibits (Cv-DE#10) to this court's order to show cause, the Presentence Investigation Report (PSI), the Forensic Evaluation performed by Dr. Cristina Nodar Miller, and all pertinent portions of the underlying criminal file.

    This court, recognizing that the movant was proceeding pro se,

afforded the movant liberal construction pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972). As can best be discerned, the movant raised the following claims:

1.  His plea was not knowing and voluntary, and he was denied effective assistance of counsel, because his lawyer failed to:

    a.  file a requested direct appeal. (Cv-DE#1; Cv-DE#3:4);

    b.  have a meaningful discussion regarding whether to plead guilty or proceed to trial. (Cv-DE#3:7);

    c.  properly counsel him and instead, unlawfully advised him to plead guilty and forego any mental evaluation, and then to lie to the court at the Rule 11 proceeding. (Cv-DE#3:8); and,

    d.  obtain movant's mental health records in order to investigate and ascertain the movant's competency. (Cv-DE#3:13,16),

2.  He was denied effective assistance of counsel, where his lawyer misadvised him to plead guilty to knowingly distributing drugs within 1000 feet of a protected area, when the movant, in fact, lacked the ability to know or appreciate the nature of his criminal actions. (Cv-DE#3:15).


<u>Procedural History</u>

Given the nature of the movant's claims, a detailed procedural history follows. In the underlying criminal case under attack here, the movant was charged by Indictment with distributing crack cocaine within 1000 feet of a public elementary school on five different occasions, in violation 21 U.S.C. §841(b)(1)(B) (Counts

1 through 5). (Cr-DE#10). The movant proceeded with motion practice, filing a motion to compel disclosure of the confidential informant (**"CI"**), and a motion *in limine* to exclude portions of a November 8th, 2007 meeting. (Cr-DE#s24-25). In April 2008, the movant withdrew his motion to disclose the CI, and the court granted the movant's motion *in limine*. (Cr-DE#s35-36).

A few weeks later, on April 16, 2008, the movant entered into a negotiated, written plea with the government, agreeing to plead guilty as to Count 5. (Cr-DE#s41,51). In exchange, the government agreed to dismiss all remaining counts after sentencing. (Id.).

Pursuant to the terms of the agreement, the movant acknowledged that the sentence would be imposed by the court after considering the advisory guideline sentence. (Cr-DE#41:1-2). The movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is either more or less severe than the guideline sentence. (Id.:2). The movant agreed that the court was required to consider the advisory guideline sentence, but was not bound to impose such a sentence. (Id.). Rather, the court was permitted to tailor the ultimate sentence in light of other statutory concerns, and that the court could ultimately impose a more severe or less severe sentence than the advisory guideline sentence. (Id.). The movant also acknowledged and understood that he faced a statutory minimum term of 5 years and up to a maximum of 80 years in prison. (Id.). The movant also understood that any estimate of the probable sentencing range he may receive, whether from defense counsel, the government, or the probation officer, is a prediction, and not a promise, and is not binding on the government, probation, or the Court. (Id.:4). The agreement further contained cooperation language, and reserved the right to the government to evaluate the

nature and extent of the movant's cooperation. (<u>Id</u>.:5). Finally, the movant acknowledged that 18 U.S.C. §3742 afforded him the right to appeal the sentence imposed, however, as part of the agreement, he was waiving all rights conferred under §3742 to appeal any sentence imposed, or to appeal the manner in which the sentence was imposed, unless the sentence exceeded the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court established at sentencing. (<u>Id</u>.:5).

In exchange, the government agreed to dismiss all remaining counts after sentencing. (<u>Id</u>.:1). The government also agreed to recommend up to a three level reduction in the movant's base offense level based on his timely acceptance of responsibility. (<u>Id</u>.:3). The government and the movant jointly agreed, although not binding on the probation officer or the court, to recommend that the quantity of drugs involved in the offense was at least 50 grams, but less than 150 grams of crack cocaine. (<u>Id</u>.:4).

Prior to sentencing, a PSI was prepared which set the initial base offense level at 32, pursuant to U.S.S.G. §2D1.2, because the offense involved 84.9 grams of crack cocaine sold near a public elementary school. (PSI ¶16). However, pursuant to U.S.S.G. 4B1.1(a), because the movant was considered a career offender as he was 18 years old at the time of the offense, the offense was a felony controlled substance offense, and he had at least two prior felony convictions for crimes of violence and/or felony controlled substance offenses, the base offense level was increased to a level 34. (PSI ¶22). The base offense level was then reduced by three based on the movant's timely acceptance of responsibility, which resulted in a total adjusted offense level 31. (PSI ¶¶23-25).

The probation officer also determined that the movant had a total of 11 criminal history points, resulting in a criminal history category V. (PSI ¶38). However, because the movant was a career offender, pursuant to U.S.S.G. §4B1.1, the criminal history category was set at VI. (Id.). Based on a total offense level 31 and a criminal history category VI, the resulting guideline range was set at 188 to 235 months in prison. (PSI ¶81). Statutorily, the movant faced a minimum of 5 and a maximum of 80 years in prison for violation of 21 U.S.C. §§841(b)(1)(B) and 860(a). (PSI ¶80).

The movant filed objections to the PSI, challenging the recitation of the movant's criminal history, as well as, requesting a downward departure based on the movant's mental health. (Cr-DE#42). On July 26, 2009, the movant appeared for sentencing. (Cr-DE#50). At that time, the court overruled the objections regarding the movant's criminal history, finding that probation had verified the prior convictions listed in the PSI. (Id.). Regarding his request for a downward departure, the court heard argument from the parties, including the government, who indicated that not seven months after being released from prison, the movant committed another crime. (Id.:4-5).

Prior to imposing sentence, the court the movant addressed the court directly, stating in pertinent part as follows. (Id.:5-6). The movant explained that at the time of his offense, he was influenced by drugs, and claims he was now a changed man, and an expectant father. (Id.). After hearing argument from the parties, the court denied the movant's request for a downward departure, nothing that none of the bases alleged are appropriate to warrant the departure. (Id.:6). The court further noted that it appeared from the record the only time the movant was free of crime was when he was incarcerated or otherwise detained by immigration officials.

5

(Id.). In considering the movant's criminal history, the court expressed concerns regarding whether or not a low end guideline sentence was appropriate in light of the statutory factors it also had to consider. (Id.:7). After considering the guidelines, together with the statutory factors, the court reluctantly accepted the recommendation from the parties that the movant be sentenced to the low end of the advisory guideline range. (Id.:8). Thereafter, he sentenced the movant to a term of 188 months in prison, followed by 8 years supervised release. (Id.). The judgment was entered by the Clerk on June 30, 2008. (Cr-DE#44). No direct appeal was filed.

For purposes of the federal AEDPA one-year limitations period, the judgment of conviction became final on July 14, 2008, ten days after the entry of judgment, when time expired for filing a notice of appeal.[1] This motion to vacate was timely filed less than one year later on June 5, 2009.[2] (Cv-DE#1).

In his motion (Cv-DE#1), the petitioner raises two claims challenging counsel's effective. However, he does not identify the substance of the claims, but instead references his supporting memorandum for the factual support thereof. (Cv-DE#3). The memorandum, again sets forth two claims, but is a rambling document, difficult to decipher, and wrought with complaints concerning counsel's performance.

---

[1] Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.Civ.P. 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). On December 1, 2002, Fed.R.App.P. 26 which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

[2] See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

## Standard

Turning to the merits of the claim before the court, the movant raises multiple claims challenging counsel's effectiveness, that are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard. See Massaro v. United States, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001); Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (quoting Strickland v. Washington, 466 U.S. at 689-90; Chandler v. United States, 218 F.3d 1305 (11TH Cir. 2000)(en banc), cert. den'd, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11th Cir.), cert. den'd, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v.

Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." Chandler, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." Chandler, 218 F.3d at 1318 (quoting Strickland, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the adversarial process at trial...worked adequately." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)(quotation marks omitted). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d at 386.

Under the second prong of the test set forth in Strickland,

the petitioner can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Rather, the petitioner must demonstrate that "there is a reasonable probability that, absent [counsel's] errors, the jury would have had a reasonable doubt regarding [his] guilt." Blackburn v. Foltz, 828 F.2d 1177, 1186 (6th Circ. 1987), cert. den'd, 485 U.S. 970 (1988), see also, Montgomery v. Petersen, 846 F.2d 407, 416 (7th Cir. 1988).

However, it is well settled that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11th Cir. 1982); Coco v. United States, 569 F.2d 367 (5th Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.), cert. den'd, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

Decisions whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy. See United States v. Costa, 691 F.2d 1358 (11th Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir. 1992)(quoting United States ex

9

rel. Cosey v. Wolff, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strickland v. Washington, 466 U.S. at 690-91.

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

## Evidentiary Hearing Claim

Construing the movant's arguments liberally as afforded *pro se* litigants, in **claim one**, the movant asserts that counsel was ineffective for failing to file a requested direct appeal. (Cv-DE#3:4). According to the movant, counsel misadvised him that he could not appeal because he had waived the right. (Id.). The movant maintains he was abandoned by counsel, left sitting in prison, suffering from serious mental health problems, after entering into

a plea which resulted in a severe 188-month sentence. (Id.). He claims that due to his mental health issues, he was unaware of what transpired at the Rule 11 hearing and thus did not comprehend counsel's representations regarding his appellate rights. The claim was not conclusively refuted by the record, and warranted further evidentiary findings. At the evidentiary hearing January 6, 2011 evidentiary hearing, testimony was taken from the movant, and his criminal defense counsel, Louis Casuso, Esquire.

## A. Failure to File Requested Direct Appeal

The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a per se constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); United States v. Stanton, 2010 WL 3705964 (11th Cir. 2010)(quoting Flores-Ortega, supra.).

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Roe v. Flores-Ortega, supra at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. Id.; see also, McElroy v. United States, 2007 WL 4393955, *1 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir.

11

2005).

Even if a defendant contractually waived the right to appeal, counsel may be ineffective for not filing a notice of appeal when directed to by the client because the merits of an appeal are not to be considered when determining whether an out-of-time appeal should be permitted. Gaston v. United States, 237 Fed.Appx. 495, 497 (11th Cir. 2007). The defendant need not show that there were viable grounds for such an appeal. Martin v. United States, 81 F.3d 1083 (11 Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11 Cir. 1995); Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief). Prejudice is presumed when counsel fails to file a notice of appeal when requested to do so by a client. Gaston v. United States, 237 Fed.Appx. at 496, citing, Flores-Ortega, 528 U.S. at 483.

In the case of an appeal following a guilty plea, however, the defendant is entitled to an out-of-time appeal of sentencing issues only. Flores-Ortega, 528 U.S. at 483. Only sentencing claims may be raised on an out-of-time appeal following a plea because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more appropriately raised in §2255 proceedings." Montemoino at 417. It should also be noted that "[A] waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). Moreover, "a vigorous dispute about an issue during the

sentencing proceedings does not preserve that issue for appeal when the terms of the appeal waiver do not except it from the waiver." United States v. Bascomb, 451 F.3d 1292, 1296 (11th Cir. 2006).

Although there was a limited appeal waiver in this case, the Eleventh Circuit has clarified that counsel must still file a notice of appeal if directed to do so by his client, unless the movant has waived all of his appellate rights. See, Gomez-Diaz v. United States, 433 F.3d 788 (11 Cir 2005). Specifically, the Eleventh Circuit held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is *per se* professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. Id. at 794.

Former counsel, Louis Casuso, Esquire, an experienced criminal defense attorney for the past 32 years, testified that he was retained to represent the movant, after the movant became disenchanted with his court-appointed assistant federal public defender. According to counsel, he met with the movant a number of time, to discuss the case. He did so without the aid of a Spanish interpreter, as counsel speaks Spanish fluently. Counsel recalled that he had no difficulty communicating with the movant. In fact, the movant understood the nature of the conversations, and thereafter, was able to provide the names of individuals in hopes of getting a reduction in sentence based on cooperation. Counsel also testified that the movant had no difficulty whatsoever remembering the circumstances of his case, understood the charges against him, and was able to assist with his defense.

Counsel also testified that he never thought to have the movant evaluated for mental competency prior to the change of plea

because he didn't believe it was necessary as he was able to confer with the movant, who did not exhibit any signs which would cause counsel concern regarding the movant's competency. Counsel explained that it is his practice not to request mental evaluations of clients, when a client demonstrates an ability to communicate with him, exhibit no signs of any mental infirmity, and where such evaluation will not assist in a client's defense. Here, counsel did not believe that the evaluation would have helped with movant's defense as insanity would not have been applicable to the charged conduct. Also, counsel stressed that at all times, the movant was able to effectively communicate and assist him with preparing the case.

Regarding plea negotiations, counsel recalled negotiating a plea and the government then providing him with a written plea agreement. Counsel testified he then met with the movant, at which time, he translated the written plea into Spanish, explaining the contents thereof, paragraph by paragraph. Counsel also specifically recalled going the paragraphs containing the limited waiver of the movant's appellate rights, the one apprising the movant that he was facing at least 5 years and up to 80 years in prison, and that any estimates by counsel or the government cannot be relied upon, and thereafter, could not form the basis for withdrawal of the plea. According to counsel, the movant signed the plea in his presence. Although counsel could not recall if the movant had any questions regarding the terms contained therein, counsel stated that the movant had no difficulty understanding what was being explained to him.

Counsel also remembered discussions were had with the movant regarding his prior criminal record, which in counsel's opinion, was "terrible." The movant expressed concerns about how these

priors could affect his sentence. Counsel agreed to try to research the issue, and attempt to get some of the movant's priors vacated. However, after reviewing the transcript of the pleas in those cases, counsel advised the movant that there was no basis for vacatur of the convictions, and therefore he was facing an enhanced sentence as a career offender.

After the Rule 11 hearing, counsel accompanied the movant to the interview with probation. At that time, the movant brought up the issue of a prior accident and how he sustained trauma which has caused him to have mental issues. However, counsel specifically recalled that the movant had no problem communicating with the probation officer, and provided appropriate responses to the questions posed. Counsel opined that none of the mental issues affected the movant's ability to understand any of the proceedings. Counsel explained that he raised the issue at sentencing in hopes of getting a variance.

Counsel was also forthright and unequivocal that the movant never requested that he be mentally evaluated, nor did the movant express any concerns that he did not comprehend any of the proceedings had because of his past mental issues. In fact, the movant expressed his discontent with the length of the sentence ultimately imposed, but never asked counsel to appeal the sentence.

After sentence was imposed, counsel recalled meeting with the movant on numerous occasions. During those meetings, no mention was made by the movant of prosecuting an appeal. To the contrary, the movant was focused on having his then significant other cooperate with authorities in the hopes of getting his sentence reduced in the future. Unfortunately, counsel recalled that movant's girlfriend was pregnant, and was unreliable, missing several

scheduled appointments for debriefing.

At the evidentiary hearing, the movant offered equivocal testimony. At first, the movant testified he never went over his case with counsel. Later, during cross-examination, he recalled discussing the nature of his prior convictions and how it would affect his sentence exposure if counsel was unable to get the convictions vacated. Also, the movant testified counsel promised that, pursuant to the terms of the plea agreement, the movant would be placed on probation and serve no prison time. Later, however, he stated that counsel advised him that, "on paper," the plea called for a mandatory five year term of imprisonment. According to the movant, he claims counsel told him not to worry, that he would "get him off."

The movant further testified that counsel did not go over every word of the agreement with him. In fact, the movant reiterated on several occasions that counsel repeatedly "lied" to him. He also maintained counsel only translated "whatever he wanted" from the plea, and denied going over each paragraph of the written plea.[3] He conceded, however, being asked by the court and responding at the Rule 11 hearing that he was, in fact, satisfied with counsel representation.

The movant further testified that he had very little recollection of events leading up to and surrounding the change of plea proceedings because he had not been taking his medications for his psychological problems as the prison had run out of the

---

[3]This testimony is directly contradicted by the movant's testimony at the Rule 11 proceeding. The movant, however, attempts to explain the discrepancy, stating he was uncertain what was transpiring at that time because he was not on his psychotropic medications. Alternatively, he maintains counsel advised him to answer the questions as set forth therein.

medicines. He claims when he is off his medications, he feels "bad," is easily confused, and doesn't understand things well. However, he could specifically recall a conversation with counsel regarding obtaining vacatur of his prior convictions in state court. He also recalled asking counsel what the ramifications would be if counsel were unable to get his prior convictions vacated, and he were enhanced by the court here. The movant acknowledged that counsel researched the issue, and then advised him that he would be unable to vacate the priors and thus faced an enhanced sentence.

The movant also testified that he remembers pleading guilty, and remembers being asked a series of questions by the judge. According to the movant, he advised the judge that he understood the terms of the plea agreement, but now explained that he responded in that fashion because his attorney counseled him to simply agree with the court and respond to the questions posed. The movant states that he followed counsel's advice because he was relying on his attorney. Thus, the court finds the movant's testimony here that his memory was sketchy during the plea process and then at the Rule 11 proceeding is disingenuous.

From the movant's testimony here, it also became evident that the movant had a clear recollection of events occurring after the change of plea, but prior to sentencing. The movant testified that after the Rule 11 proceeding, a conversation was had with the case agent, who said he could forget about getting a reduction based on cooperation. According to the movant, the agent was only going through the motion of debriefing him as a "favor" to counsel.

After sentence was imposed, the movant claims he advised counsel he wanted to appeal because he did not believe he would be receiving a reduction based on cooperation. The movant testified he

then relayed to counsel what the case agent had advised him. The movant states counsel became angry, hitting the table. At this juncture, however, the movant's recollection of what transpired became fuzzy, stating he could not recall what counsel stated regarding the prosecution of an appeal.

The movant further recalled meeting with counsel during the 10-day appeal period. The movant advised counsel he was unhappy with the sentence and wanted to file an appeal. The movant conceded he never called his lawyer nor did he write any letters to inquire as to the status of his appeal because he presumed that counsel was perfecting the requested direct appeal.

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned credits the testimony of movant's counsel, Attorney Casuso, that a brief discussion was had, on at least one occasion, regarding the movant's appellate rights. This court further finds credible counsel's explanation that the movant never indicated he wanted to pursue a direct appeal. To the contrary, this court accepts counsel's testimony that the movant was more interested in pursuing cooperation in the hopes of getting a Rule 35 reduction in sentence. The court is not persuaded by the movant's testimony that he insisted that counsel file a direct appeal, especially since the movant concedes he did nothing to verify the status of his direct appeal, or to insure that his appellate rights were preserved. In conclusion, the court finds that the movant was advised of his appeal rights and agreed to waive those rights after consultation with his attorney. Consequently, counsel was not ineffective and the movant is not entitled to an out-of-time appeal.

In sum, the undersigned does not find credible the movant's

18

testimony that he asked his lawyer to file an appeal. Moreover, this court further finds that the movant failed to establish what, if anything, he did to verify the status of his appeal, or to insure that his appellate rights were preserved. Thus, the court finds that the movant never requested that a direct appeal be filed.

### B. Duty to Consult

In cases like this, where the undersigned finds the movant did not instruct counsel to file an appeal, the next question to consider, to-wit, whether counsel performed deficiently, is "best answered by ... asking a separate, but antecedent question: whether counsel in fact consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478.

"[W]here a defendant has not specifically instructed his attorney to file an appeal, we must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" Thompson v. United States, 504 F.3d 1203 (11th Cir. 2007)(quoting Flores-Ortega, 528 U.S. at 478).[4]

Relying on the Supreme Court's definition of the term "consult," the Eleventh Circuit has held that "adequate consultation requires: (1) informing a client about his right to appeal, (2) advising the client about the advantages and disadvantages of taking an appeal, and (3) making a reasonable

---

[4]During closing argument, movant's counsel argued that this case was similar to the Eleventh Circuit's decision in Thompson. However, this court finds Thompson distinguishable. There, the court concluded both that "it cannot be said that no rational defendant would have wanted to appeal, and that Thompson demonstrated an interest in the appeal." Thompson v. United States, 504 F.3d at 1208. Here, however, no showing has been made that the movant demonstrated an interest in pursuing a direct appeal.

effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." <u>Thompson v. United States</u>, 504 F.3d 1203, 1206 (11th Cir. 2007)(<u>citing</u>, <u>Frazer v. South Carolina</u>, 430 F.3d 696, 711 (4th Cir. 2005)); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005). A defendant should be provided with enough information to either "intelligently and knowingly [] assert[] or waive[] his right to an appeal. <u>Thompson v. United States</u>, 504 F.3d 1206. If, however, two of the three elements of adequate consultation are not satisfied, then it is apparent that counsel failed to consult with the movant regarding his appellate rights. <u>Flores-Ortega</u>, 528 U.S. at 478. In this case, as discussed more fully *infra*, no adequate consultation was had.

At the evidentiary hearing, it was uncontroverted that at least one, if not more meetings, where had at the local detention center following the imposition of sentence. It is uncontroverted that the movant was extremely unhappy with the length of the sentence imposed, but counsel advised him there were no nonfrivolous grounds for an appeal, and that it was best to attempt to obtain a reduction in sentence by having his girlfriend cooperate with authorities. According to counsel, the movant never indicated he wanted to file an appeal.

Counsel recalls that numerous discussions ensued after sentencing regarding cooperation, but none were specifically had regarding the advantages or disadvantages regarding the prosecution of an appeal. Counsel did believe he told the movant he had the right to prosecute an appeal within a certain number of days, but movant never instructed him to do so. Rather, the plan was to proceed with cooperation. The movant, however, claims he instructed counsel to file an appeal. On the record before this court, it is evident that the movant was informed about his right to appeal,

thereby satisfying the first prong of consultation.

However, it is not clear from the testimony at the evidentiary hearing whether during these meetings counsel discussed with the movant the advantages and disadvantages of taking an appeal. Neither counsel nor the movant could recall the specifics of the conversation which ensued once the request was purportedly made by the movant. Thus it appears that no meaningful discussion was had between the parties regarding the advantages or disadvantages of pursuing a direct appeal. See Thompson v. United States, supra. By counsel's own admission, if he had discussed the issue, he would have advised the movant that there were no nonfrivolous grounds for an appeal, and would have reminded the movant of the limited appeal waiver he entered into as part of his plea.

C.   If No Consultation Had, Was Counsel Deficient?

Even if the court were to assume, without deciding, that no consultation was had regarding pursuit of an appeal, the law is clear that a criminal defense lawyer, however, is not under a *per se* constitutional obligation to consult with his or her client about an appeal. See Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007)(quoting, Flores-Ortega, 528 U.S. at 479). In some cases, the Sixth Amendment requires such consultation; in others, it does not. Otero v. United States, 499 F.3d at 1270. "We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." Otero v. United States, 499 F.3d at 1270 (quoting Flores-Ortega, 528 U.S. at 479). The Supreme Court has rejected such a bright line rule in this

context finding it would be "inconsistent with <u>Strickland</u>'s[1] holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" <u>Flores-Ortega</u>, 528 U.S. at 478.

The Supreme Court has explained, however, that **"counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."** <u>Flores-Ortega</u>, 528 U.S. at 480; (emphasis added). This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly ... waived some or all appeal rights." <u>See</u> <u>Otero v. United States</u>,[2] 499 F.3d at 1270 (<u>quoting</u> <u>Flores-Ortega</u>, 528 U.S. at 480).

In this case, the movant's conviction was the result of a negotiated, written plea agreement.. This tends to confirm the fact that the movant was "seek[ing] an end to judicial proceedings." <u>Flores-Ortega</u>, 528 U.S. at 480. The movant was sentenced to the low end of the guideline range to a term of 188 months in prison. It is undisputed, however, that the movant was aware prior to sentencing that he faced the possibility of a term of up to 80 years in prison.

---

[1] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

[2] In <u>Otero</u>, the Eleventh Circuit noted that "[A] criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal," because in "some cases, the Sixth Amendment requires consultation; in others, it does not." <u>Otero v. United States</u>, 499 F.3d at 1270.

To determine if a rational defendant would want to appeal, it is "relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal." Otero v. United States, 499 F.3d 1267, 1271 (11th Cir. 2007). Here, the foregoing factors weigh heavily in favor of the government. Otero v. United States, 499 F.3d at 1271. The movant negotiated a favorable plea agreement, and there appears to have been no nonfrivolous grounds for an appeal. Any challenge to the sentence on appeal would thus not have been successful. Under the totality of the circumstances present here, the Court finds no rational defendant in the movant's position would have sought to appeal. This is so given the guideline sentence imposed, which was well below the statutory maximum.

Moreover, the only evidence relied upon by the movant to establish that he showed any interest in appealing is his own self-serving testimony in which he stated that he instructed his counsel to file a notice of appeal after imposition of sentence. The movant concedes he never attempted to contact counsel by phone or write counsel any letters confirming the request, and/or inquiring as to the status of the appeal. As previously narrated in this Report, the court credits counsel's testimony that the movant never demonstrated an interest in filing an direct appeal. Thus, the court finds the movant has failed to demonstrate that, but for counsel's failure to consult with him about an appeal, he would have timely appealed. See Flores-Ortega, 528 U.S. at 484.

Because no rational defendant in the movant's position would have sought to appeal, and because the court finds the movant did not communicate to counsel a desire to appeal, the Court finds that counsel was not under a constitutional obligation to consult with

the movant regarding an appeal. Regardless, even if trial counsel insufficiently consulted with the movant, it did not amount to ineffective assistance of counsel under Strickland. Thus, the movant is entitled to no relief on this claim.

<u>Remaining Claims</u>

In **claim one**, the movant also challenges counsel's effectiveness during the plea discussions, and at the Rule 11 proceeding, claiming counsel was deficient for failing to obtain the movant's mental health records and/or investigate the movant's competency prior to the Rule 11 hearing. (Cv-DE#3:7,8,13,16). In **claim one** and **claim two**, the movant also asserts counsel misadvised him to plead guilty to knowingly distributing drugs within 1000 feet of a protected area, when the movant, in fact, lacked the ability to know or appreciate the nature of his criminal actions. (Cv-DE#3:15). The arguments raised by the movant are either clearly refuted by the record and/or otherwise waived based on the knowing and voluntary plea.

<u>Failure to Have Movant Mentally Evaluated</u>. The movant faults counsel for failing to have him examined in order to determine his mental competency both at the time of the offense and prior to the change of plea proceeding. (<u>Id</u>.). According to the movant, he suffered a traumatic injury, was in a coma for weeks, and has a long history of mental illness which requires the use of psychotropic medications.[3]

---

[3]Psychotropic drugs are a large class of drugs which affect mental activity. These drugs are used to treat serious psychotic disorders. They reduce the symptoms of hallucinations, delusions, paranoid ideation, and disturbed mental thought in patients. "The purpose of the drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes." <u>Washington v. Harper</u>, 494 U.S. 210, 229 (1990). Many medical authorities consider these drugs to be the primary treatment for

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984). Such is the case here.

The mere fact that the movant suffered with mental ailments at the time of the offense, and at all times thereafter, including the time of the change of plea proceeding, is insufficient in itself to show that the movant was prevented by any alleged lack of mental capacity from lawfully entering the guilty plea. In other words, movant's mental condition, which apparently requires treatment with psychotropic medications, does not establish that he was mentally incapacitated during the plea discussions with counsel or at the Rule 11 proceeding. The fact that movant may have at times needed psychotropic medications weighs more in favor of him being able to function than not. See Brown v. McKee, 232 F.Supp. 761, 768 (E.D.Mich. 2002).

In this case, the court's inquiry during the plea proceeding indicates that the movant had been receiving treatment for his mental health condition, to-wit, bipolar, schizophrenia. (Cr-

---

acute and chronic mental disorders. See Mills v. Rogers, 457 U.S. 291, 293 n. 1 (1982).

25

DE#51:3). When questioned by the court, counsel, however, stated that the movant knew right from wrong, and there was no question that he understood what was going on. (Id.). In fact, the movant addressed the court directly, stating that he is being treated for his condition and was taking his medications. (Id.:4). The movant then denied having any problem with understanding the nature of the Rule 11 proceedings. (Id.:4). He did explain, however, that he had not received his psychotropic medications for the last two days, but denied having any problem understanding the proceedings being had. (Id.:5). He explained that being off the medications did not cause him to be unable understand what was going on. (Id.).

At the change of plea hearing, the movant also agreed, under oath, that he had carefully read and thoroughly discussed the written plea agreement with counsel. (Id.:15). He also conceded that when he signed the plea agreement, he had a fair and complete understanding of the terms and conditions contained therein, and how it could affect his sentence exposure. (Id.). The movant further denied being made any promises other than those contained within the plea. (Id.:16). The movant also agreed with the government's factual proffer and indicated that he was guilty as charged in Count 5 of the Indictment. (Id.:19).

Independent review of the record as a whole confirms that any possible mental health issues suffered by the movant did not impair his ability to proceed with the guilty plea. To the contrary, when asked by the court if he felt well enough to enter a guilty plea, the movant responded in the affirmative. The trial court thoroughly questioned the movant regarding his capability and his understanding of what was transpiring at the plea proceeding, and his understanding of all conversations previously had with his lawyer. It is also pointed out that review of the transcript of the

26

plea proceeding in its entirety indicates that the movant was coherent and appropriately responded to all of the court's questions. The fact that the movant is bipolar and/or schizophrenic and was not taking his medications on the date of the Rule 11 proceeding, does not indicate a lack of mental competency.

In fact, given the movant's medical history, the trial court went to great pains to ensure that the movant was entering a guilty plea knowingly and voluntarily and that the movant understood the proceedings and the consequences arising therefrom. The trial court judge fully apprised the movant of the constitutional rights he was forfeiting by pleading guilty.

Under these circumstances, no showing has been made in this collateral proceeding that counsel was ineffective for failing to have the movant examined to ascertain his mental competency. The law is clear that it is a fundamental requirement of Due Process that defendants be mentally competent upon entering a guilty plea or proceeding to trial. The test for determining a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960). The mere presence of mental illness or other mental disability at the time of trial does not necessarily mean that a defendant is incompetent under the Dusky test. The mental illness or disability must have been so debilitating that the defendant was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings. See generally Bolius v. Wainwright, 597 F.2d 986, 990 (5 Cir. 1979). No such showing has been made here.

27

Relevant indicia of a defendant's incompetence include a defendant's irrational behavior, courtroom demeanor, or medical opinion. Drope v. Missouri, 420 U.S. 162 (1975). Because it is often defense counsel who is in the best position to discover whether the defendant's competency is questionable, failure of defense counsel to raise competency is compelling evidence that the defendant's competency was not really in doubt. See: Watts v. Singletary, supra; Adams v. Wainwright, 764 F.2d 1356, 1360 (11th Cir. 1985).

The movant's allegation that he was suffering from schizophrenia and/or a bipolar disorder, and the like which prevented him from assisting his attorney is wholly conclusory with no substantiation in the record other than the movant's own self-serving statements. Although the movant may have suffered from mental health issues, it appears that he was competent at all material times. Additionally, there is nothing of record to suggest that the movant was legally insane. Independent review of the record reveals otherwise. In fact, at the change of plea proceeding and at sentencing, the movant was lucid and candid when addressing the court regarding his concerns. Consequently, even if counsel had requested that the movant undergo additional psychological and/or psychiatric evaluations and/or testing prior to the change of plea proceeding, no showing has been made here that such an exam was warranted, nor that the court would have granted the request. Consequently, no prejudice has been established arising from counsel's failure to pursue this claim. He is therefore entitled to no relief on this claim.

Misadvice Regarding Plea Discussions. The movant also appears to argue that he was misadvised by counsel to plead guilty, knowing that the movant suffered from a mental illness which precluded him

28

from having the requisite knowledge that he was selling drugs near an elementary school. He argues that had counsel properly investigated the movant's mental health, he would have realized the movant did not have the requisite intent to commit the charged offenses. (Cv-DE#3:16). He also claims counsel lied to him, advising him he would get a probationary term, rather than imprisonment. According to the movant, but for counsel's deficiency, he would not have plead guilty and would have proceeded to trial.

These assertions were waived due to the entry of a knowing and voluntary guilty plea. The law is clear that a movant waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See United States v. Broce, 488 U.S. 563 (1989); McMann v. Richardson, 397 U.S. 759 (1970) (voluntary guilty plea waives all non-jurisdictional defects); United States v. De La Garza, 516 F.3d 1266, 1271 (11th Cir. 2008), quoting, Wilson v. United States, 962 F.2d 996 (11th Cir. 1992)(claim of ineffective assistance of counsel relating to pre-plea issues waived by voluntary guilty plea); McCoy v. Wainwright, 804 F.2d 1196, 1198 (11th Cir. 1986)(voluntary guilty plea waives all non-jurisdictional defects); see also, United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5th Cir. 1991); Smith v. United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." United States v. Glinsey, 209 F.3d at 392.

As previously narrated in this Report, review of the record confirms that the movant's plea was knowing and voluntary, and therefore, the movant waived any defense he may have had prior thereto to the charged conduct. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding any legal defenses that he may be entitled to as it relates to his case. Consequently, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. See Strickland, supra. The movant is thus entitled to no relief on his generalized allegations concerning counsel's representation or the voluntariness of his plea.

Regarding counsel's alleged inaccurate estimation of the movant's sentence exposure, the law is clear that an inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel. United States v. Pease, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years); United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). Here, the plea agreement and the Rule 11 transcript confirm the movant was aware that he faced up to 80 years in prison on the offense of conviction. He acknowledged that any estimates by counsel or the government were merely a prediction and could not be relied upon to vacate the plea. Even if counsel was deficient regarding the movant's sentence exposure, the movant cannot establish prejudice arising therefrom as any alleged deficiency was cured by the court's thorough Rule 11 proceeding.

Finally, the court finds that the movant knew the benefits of pleading guilty and understood that if he proceeded to trial and was convicted, he faced a severe term of imprisonment. Again, the court is not persuaded and therefore rejects the movant's testimony that, had he been properly advised regarding his sentencing exposure, he would not have pleaded guilty and would have proceeded to trial. Thus, the movant has failed to establish deficient performance or prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). He is therefore entitled to no relief on this claim.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that the motion to vacate be denied, and this case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 12th day of January, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Martin A. Feigenbaum, Esquire
     Attorney for Movant
     P.O. Box 545960
     9553 Harding Avenue
     Surfside, FL 33154
     Telephone: (305) 866-8334
     Fax: (305) 866-8335

     Marlene Rodriguez, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132

31